PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ CAPRE, Defendant and Appellant.

No. 4570.   Argued April 22, 1932.—Decided November 25, 1932.

*Juan Valldejuly* for appellant. *E. Díaz Viera, Assistant Fiscal,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

José Capre was charged with the crime of perjury and sentenced to two years in the penitentiary at hard labor. Feeling aggrieved, he appealed and assigns in his brief the commission of five errors.

By the first he maintains that the demurrer interposed by him to the information should have been sustained for five reasons, to wit: Because it does not appear therefrom that the defendant subscribed the sworn declaration before P. del Manzano, Deputy Clerk; because deputy clerks of the district courts have no authority to take oaths, and if they do it is a personal authority; because Deputy Clerk Manzano is not an attorney at law as is the clerk; because the affidavit does not contain all the requisites prescribed by the law; and because it is not alleged that the affidavit was taken in a proceeding already submitted to the jurisdiction of the court.

In our opinion none of the reasons adduced justifies the error assigned. What the information states is that the defendant "wilfully and maliciously and in a corrupt man-

ner, having taken oath to tell the truth, the whole truth, and nothing but the truth before the Deputy Clerk of the District Court of San Juan, Pedro del Manzano, an officer duly appointed and in the discharge of his employment, with authority to take oaths, did swear as true a fact which he said he knew of his own knowledge, in proceeding for a declaration of heirship, by reason of the death of Luis López Laboy," instituted the following, which is fully transcribed in the information:

"Affidavit.—I, José Capre y Cajigas, under oath state:—That my name is as above stated, that I am of full age, an industrial, and resident of San Juan at present.—That I know Doña Ildefonsa López, affiant having lived in Mayagüez, P. R., for many years, where she also resided.—That I know of my own knowledge that said lady died in Mayagüez, her last domicile, some time in the month of August, 1898, in the ward of Río of said municipality.—That affiant attended the funeral services of said lady, and the burial took place in the cemetery of said city, which is situated in the outskirts of Mayagüez on the road to San Germán.—(Signed)—José Capre.—Sworn to and subscribed before me, this 9th day of February, 1929, in San Juan, P. R.—(Signed) L. Vergne Ortiz—Clerk, District Court. By P. del Manzano, Deputy Clerk."

After quoting the above affidavit, the information goes on to say: "it being untrue that Ildefonsa López had died and the defendant being aware of the falsity of such statement. The affidavit so signed was delivered by the defendant to the deputy clerk and received by the latter in the course of his official duties, with the intent then and there that the same produce its effects in the proceeding for the declaration of heirship instituted by Hilaria López, before the District Court of San Juan, by reason of the death of Luis López Laboy; and such fact was essential in order that the court might determine as it did, taking into consideration said affidavit, the proceeding for declaration of heirship brought by Hilaria López by reason of the death of Luis López Laboy. This fact is contrary to the law for such cases provided and against the peace and dignity of the People of Puerto Rico."

Section 89 of the Code of Criminal Procedure provides:

"Section 89.—In an information for perjury or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the offense was committed and in what court and before whom the oath alleged to be false was taken, and that the court or the person before whom it was taken, had authority to administer it with proper allegations of the falsity of the matter on which the perjury is assigned; but the information need not set forth the pleadings, record, or proceedings with which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed."

A mere comparison between the above statutory provisions and the information, leads to the conclusion that the latter contains everything that the law requires.

But entering specifically into the grounds urged by the appellant, we find that the information states that the oath was personally taken before the deputy clerk of the court. The fact that the name of the clerk was made to appear is due to the practice followed in such cases, but it does not mean that the deputy clerk failed to act personally.

As regards the power of the deputy clerks of the district courts to take affidavits, it will suffice to quote from the decision of this Court in *People* v. *Colón*, 17 P.R.R. 973, as follows: "Subsecretaries, who may be appointed by their chiefs, are also authorized to take oaths. (Act of March 8, 1904, sec. 2, p. 151; Act of March 10, 1904, sec. 2, p. 118; and Act of March 9, 1910, sec. 1, p. 77.)" In the instant case the deputy clerk of the District Court of San Juan is appointed by the clerk thereof in conformity with the provisions of section 5 of Act No. 105 of 1925, Session Laws, p. 968.

The law does not require that the deputy clerk be an attorney at law. It so requires in the case of the clerk, and the argument that because the clerk of the court should be an attorney the deputy clerk must be also an attorney lacks any decisive force.

The fact that the deputy clerk failed to state that the person who signed the affidavit was Capre, does not annul

the jurat. It appears from the document itself that Capre was the person who swore to it, and it is specifically stated in the information that it was he, this fact being susceptible of proof by evidence *aliunde* at the trial.

Finally, it appears from the affidavit and is expressly alleged in the information that the affidavit was made to be used, as it was, in a proceeding for declaration of heirship, which is a proceeding authorized by law.

The second error assigned is formulated thus:

"In overruling the general challenge to the panel from which the jury that tried the defendant was drawn."

All that appears from the record about this error is as follows:

"Defendant: Before entering into an investigation regarding the challenges for cause we are going to file a general challenge to the panel in this case, inasmuch as the District Court of San Juan, without authority of law, appointed a new commissioner and made a new selection of a certain number of jurors to complete a list of 300, under the theory that once the District Court of Bayamón was organized, the gentlemen of the jury belonging to that district could not continue as jurors or form part of the general list of 300 jurors to serve before this court, and the same were drawn April 1, 1930. We understand with this selection the law has been violated, inasmuch as a new district having been created, the law requires that in order to act as jurors the persons be residents of the district from which they were selected; and because the appointment of a new commissioner was not justified.

"District Attorney: That point was decided by the court.

"Judge: The court overrules the motion.

"Defendant: We take exception."

The *Fiscal* maintains that there is no basis in the record for passing upon the question raised, at it does not appear that the appointment of the new commissioner and the selection of the new jurors were really made; and we are inclined to agree, with him.

But accepting as true everything that the defendant said, we are not convinced that the procedure adopted by the Dis-

trict Court of San Juan in the face of the emergency arising by virtue of the creation of the District Court of Bayamón, was erroneous. On the contrary it seems logical. No harm to the defendant appears either. That the 12 jurors that should try him be drawn from the 300 jurors of his district was his right, and this was actually done. If the jurors residing in the towns pertaining to the new judicial district of Bayamón had remained in the list, then he might have complained that he had been tried by jurors who did not reside in his district—San Juan—at the time the trial was held.

Under whatever aspect we may view the question raised, the conclusion must be reached that it can not serve as a basis for the reversal of the judgment appealed from.

In the third error are grouped the exceptions taken by the defendant during the reception of the evidence.

The defendant objected to the district attorney asking the witness Del Manzano, deputy clerk of the district court, the following questions: *a*. After stating that he was acquainted with the defendant: "Do you remember whether on any occasion he appeared before you?"; *b*. Showing to the witness. the sworn statement signed by Capre: "Before whom was. this affidavit made?"; *c*. Shortly after: "Now I am going to ask the witness, who was the person that signed that document?"; *d*. And later: "Was that document subscribed before you?" The court allowed the questions. It does not appear that the first question was answered; the second was answered thus: "This affidavit was signed before me"; and the third, as follows: "It was signed by José Capre." The fourth does not appear to have been answered.

In our opinion, no error was committed. The document was not altered in any way. What the jurat did not expressly state was supplied, but the matter omitted appears from the document itself and is competent. See the jurisprudence on this point as summarized in 1 Ruling Case Law 769:

"The jurat is simply a certificate evidencing the fact that the affidavit was properly made before a duly authorized officer. Al-

though it has been said that strictly speaking it is no part of the affidavit, but simply evidence that the latter has been duly sworn to by the affiant, common prudence would dictate that a properly executed jurat be attached to every affidavit. Its omission, however, in the absence of a statute to the contrary, is not fatal to the validity of an affidavit so long as it appears either from the rest of the instrument or from evidence *aliunde* that the affidavit was in fact duly sworn to before an authorized officer.''

The district attorney offered in evidence the record of the heirship proceeding, the defendant objected, and the court admitted it. No error was committed, as the district attorney stated that he offered in evidence, the application for leave to sue *in forma pauperis,* the declaration of heirship, the affidavit of Capre, and the order of the court, all as forming part of the record, and in addition to show the existence thereof.

It was incumbent on the district attorney to show that a sworn statement had been made in a judicial proceeding with regard to a material fact therein. And the means chosen to accomplish this—by showing that the material affidavit had been taken into consideration as one of the decisive grounds for the judicial determination of the case—was lawful.

The defendant also objected to the admission of the affidavit of Capre because his file mark appeared on this document. He is wrong. In order to institute the proceeding for determination of heirship, leave to litigate *in forma pauperis* was asked. The application for such leave and the petition for heirship were jointly presented, and the latter could not have been filed without the payment of fees until the former was favorably decided. The judge granted said leave and when the petition was filed it was sufficient to indorse the file mark thereon without the necessity of repeating such indorsement on each and everyone of the documents attached thereto. This is the practice that is followed, and it is in accordance with the provisions of Act No. 17, of 1915, regulating the collection of fees and costs in civil cases in the district and municipal courts of the Island.

Several objections were raised in connection with the testimony of handwriting expert, O. M. Wood. The defendant presented as a handwriting expert P. C. Timothée, who after comparing the signature of Capre, shown on the affidavit with another that the defendant accepted as authentic, stated that these signatures had not been affixed by the same hand. Then, the district attorney presented expert Wood in rebuttal. The defendant impeached his competence, his statements with regard to the apparatus used by the expert for the defense, and his testimony in itself.

We have carefully considered all the questions raised and believe that no error was committed. From the circumstance that the expert, in spite of the many years' experience claimed by him, had testified as such expert only on very few occasions, it can not be concluded that he was not competent. An expert must sometime give his first testimony in court. His expert knowledge is what must be taken into consideration, and the witness showed by his testimony that he had such knowledge and a vast one indeed.

The fact that the expert of the prosecution considered as antiquated the instrument used by the expert for the defense, does not annul the latter's testimony. He gave his reasons therefor.

As to the claim that the expert in his testimony exceeded the limits of his functions and became a judge, as when he said: "The word 'Capre' is written with an upward stroke, because when the man who wrote it reached that part of his name he attempted to write something that was feigned . . .", and that grave error was committed in allowing his testimony to stand, we do not agree.

The witness explained the work he had done, and then stated his conclusions. The latter did not constitute a judgment of conviction. The same reasoning of the defendant could be applied to the testimony of his own expert, by saying that it constituted a judgment of acquittal.

The testimony of experts, which we may say in passing is

to be received with great caution, is subject to be believed or not by the judge or jury. The testimony of both witnesses was submitted to the jury. The latter's verdict was in accord with the conclusion reached by the expert for the prosecution, but the verdict was not rendered by virtue of that conclusion. Perhaps it exercised some influence in the result; perhaps it was absolutely disregarded. The essential evidence was contained in the document itself, in the testimony of the deputy clerk, and in the other testimony and documentary evidence offered.

In the fourth assignment of error it is claimed that the penalty imposed is excessive; and in the fifth and last, that the verdict is contrary to the evidence. We shall examine first the fifth and then the fourth.

The evidence was conflicting. The defendant testified that the signature appearing at the foot of the affidavit in question is not his, and that he never appeared before the deputy clerk; that the only thing he did was to accompany his friend (*comadre*), Amalia Lloreda, to the office of attorney Juan Pabón where the following incident occurred:

"After I stated that I was acquainted with my friend, he said: 'Sign here.' A blank space was left and he said: 'You have to sign here' and I replied: 'Well, as I am in a hurry I will sign,' and signed at the bottom where I was supposed to sign. He did not want me to sign at the end."

Against the testimony of the defendant we have the document with his signature and the sworn statement of the deputy clerk, who asserted that the defendant personally signed before him; and there is besides, the clearly established fact that a declaration of heirship of a person still living in Mayagüez was obtained in order that the petitioner might inherit from a soldier who died in Arizona, the affidavit of the defendant being material in said proceeding.

The jury decided the conflict against the defendant and there is nothing in the record to show that it acted moved by passion, prejudice, or partiality. No manifest error appears.

The penalty imposed by the court was two years in the penitentiary at hard labor. It does not appear to be excessive in any way. It does not cover even half of the full penalty fixed by the Legislature for this crime: one to ten years. The circumstance that the defendant is 57 years old and had never been sentenced for any crime is no reason for reducing the penalty. His own age should have enabled him to appreciate the seriousness of his action in appearing before a judicial officer and falsely testifying that a person living was dead in order that a third party might receive an inheritance that did not belong to him. Whatever defect may be ascribed to the penalty, it can not be said that the same is excessive.

The appeal will be dismissed and the judgment appealed from affirmed.